**KESSLER, Admrx. v BROWN**

Ohio Appeals, 5th Dist, Stark Co.

No. 1849. Decided Oct. 11, 1939

Weyer & Corlett, Cleveland, for appellant.

O. M. Abt, Canton, and Sherwood Ake, Canton, for appellee.

## OPINION

By LEMERT, J.

This cause was one for damages for the wrongful death of George Kessler brought by the administratrix of his estate for and on behalf of his widow and next of kin against George Brown, doing business as the Quality Tire Company, the employer of one Joe French, the operator of a truck owned by the defendant, which truck collided with an automobile being driven by plaintiff's decedent, causing injuries to plaintiff's decedent from which he died. The col-

lision happened at a point approximately one-half mile north of the northerly limits of North Canton, Ohio, on State Route No. 8, at about 4:45 on the afternoon of the 27th day of November, 1937, and at a point directly in front of the plaintiff's decedent's residence located on the west side of said highway. State Route No. 8 at this location is a 41 foot highway, brick pavement. Plaintiff's decedent was on his way home from his employment in Canton, Ohio, driving in a northerly direction. Upon reaching a point opposite his driveway on the said highway, the plaintiff's decedent stopped crosswise of the concrete strip marking the center of said highway slanted toward the entrance into his driveway. Defendant's agent was operating defendant's truck in a southerly direction upon said highway. Plaintiff claimed that defendant's agent operated the said truck out into the center of the said highway and into the right side of plaintiff's decedent's automobile, causing it to tip over on its side and to be pushed a distance of over 30 feet up to and against a telephone pole located over the westerly curb of the said highway.

Defendant's contention was that plaintiff's decedent drove his automobile from the stopped position directly into the path of the approaching truck and that the truck collided with the right side of plaintiff's decedent's automobile, causing it to be tipped over on its side and stopped at a position either against or near the same telephone pole.

The jury in the Common Pleas Court rendered a verdict for the defendant, and this appeal is being prosecuted in this court upon the following assignments:

1st. That certain evidence constituting part of the res gestae was excluded.

2nd. That certain rebuttal testimony offered by the plaintiff was excluded.

3rd. That certain erroneous special request charges in writing before argument by the defendant were permitted and delivered by the Court.

4th. That the Court erred in its general charge by limiting the jury's consideration of certain of plaintiff's evidence.

5th. The Court erred in its charge in defining "preponderance of evidence".

6th. That the verdict was manifestly against the weight of the evidence.

In this opinion we will proceed to deal with the 6th and last assignment of error first; to-wit, "that the verdict was manifestly against the weight of the evidence".

To properly dispose of this assignment of error, we have found it to be necessary to read the record, which we have done with some degree of care, and from a careful examination of this record we are of the opinion that the verdict of the jury is not manifestly against the weight of the evidence, and that there is ample evidence in the record to sustain the verdict.

Proceeding now to the first assignment of error, to-wit, "that certain evidence constituting the res gestae was excluded". For a correct decision on this point, we quote briefly from the record:

"Page 10. Direct examination of Mrs. Kessler:

Q. How long after the crash was it before the truck driver, Joe French came into the house?

A. It was about 10 minutes.

Page 11:

Q. What, if anything, did the driver of the truck say—

Object.

Q. —on coming into the house?

Object.

Court: Will counsel come to the bench? Thereupon Court and counsel conferred off the record.

Court: Unless you show that this is an exception to the general rule the OBJECTION IS SUSTAINED for the present.

A. Mr. Corlett: as a proffer to that former question which was not permitted to be answered, the witness

would have testified: "The truck driver said 'I gave it all I had to get around. I was going at least 60 miles per hour'."

"Page 69. Direct examination of Mrs. Martha Fall:

A. Then they pulled the car up, on its wheels, Mr. Kessler fell out. Some men caught him, Mrs. Kessler and myself was there by the car, and each of us took hold of him and we helped him into the yard.

Q. Then what happened?

A. He went down on us, and brought us down with him, because we couldn't hold him, but my husband and another man helped carry him in.

Q. Who all were in the house afterwards, as nearly as you can recall?

A. Myself and my husband, my boy, and the truck driver, and a girl named Stone, as near as I can remember.

Q. Did you hear the truck driver say anything in the Kessler residence at that time?

Object.

Court: On what theory do you urge that again?

Mr. Corlett: I am asking if she heard them make a statement.

Court: You may answer Yes or No, and then stop.

Mr. Corlett: If the Court please.

Thereupon Court and counsel conferred off the record.

Court: Objection sustained. She may not give the conversation.

Exceptions to plaintiff.

Page 70:

Mr. Corlett proffers: The witness, if permitted to answer would testify that the truck driver, Joseph French, made the statement 'I gave it all I had to get around it, but the damned fool wouldn't get out of the center of the road. I was going at least 60 miles per hour'.

Court: Court is of opinion that the remark of the truck driver in question which plaintiff seeks to introduce in evidence is incompetent, as it was made some time after the collision in question occurred, is narrative in form and in no wise constitutes a part of the res gestae of the case."

It is plaintiff's contention that these statements which Mrs. Kessler and Mrs. Fall would have testified were made by Joe French, the driver of defendant's truck, about 10 minutes after the collision itself occurred, constitute part of the res gestae of the collision.

The Court below refused to permit this testimony to go to the jury, holding that it did not constitute a part of the res gestae. From an examination of the record, we deem it unnecessary to pass upon appellants contention in this regard for the reason that it is to be noted that this alleged testimony came into the record later, probably as a part of the plaintiff's rebuttal, the record Page 184, 193, 198, and for that reason no prejudice could ensue.

These claimed statements went to the jury in rebuttal with the same force and effect intended and claimed for them by counsel for plaintiff when introducing his evidence in chief.

As to the second alleged specification of error; to-wit, the exclusion of alleged rebuttal evidence, we have to say that this has to do with the exclusion of certain testimony on the part of the witness, Jean C. Stone, at Page 186 of the record offered as rebuttal.

It is to be noted that defendant's witness, Butterfield, had testified, (Record, Page 153) that the truck collided with and scraped the tree immediately south of the drive; and that the marks made on the tree by the scraping of the truck were still there and visible several days before the trial. Plaintiff claimed that the witness, Jean Stone, if permitted to answer, would have testified that the Highway Patrolman and the passenger in the truck, (Butterfield) did not observe the tree in front of the Kessler residence.

This proffered testimony assumes that the witness, Miss Stone, observed all the movements made by both the Highway Patrol and the witness (Butterfield) which, of course, is a violent assumption. However, the proffer of this evidence was not calculated to meet the real question which was as to

whether or not marks were on the tree. We find no error in this regard

On the third specification of error; to-wit, that certain erroneous special request charges in writing before argument by the defendant were permitted and delivered by the Court. We observe from the record that ten such special written requests were handed to the Court and asked to be given to the jury. The Court refused Nos. 1, 3, 6, 9 and 10, and the Court gave Nos. 2, 4, 5, 7, 8.

Plaintiff claims that the Court erred in giving Nos. 4, 5 and 7. No complaint is made as to No. 2 and No. 8. The requests complained of by appellant are as follows:

"Number 4. If it appears from the evidence that defendant's truck was being operated in a southerly direction on that part of Route 8 west of the center of the concrete line, and that while doing so, said truck was being operated in a lawful manner, and at or about that time plaintiff's decedent was undertaking to make a left turn while coming from the south and crossed or undertook to cross over and into the path of defendant's truck while so approaching, under such circumstances and if you so find, it became the absolute duty of decedent to yield the right-of-way to defendant's truck, and the failure of plaintiff's decedent to do so under such circumstances, would constitute negligence as a matter of law on his part."

"Number 5. 'Right-of-way' means the right of a vehicle to proceed uninterruptedly in a lawful manner in the direction in which it is moving in preference to another vehicle approaching from a different direction into its path. It is the duty of the operator of the vehicle to yield the right of way to the vehicle approaching from its right at the intersection of its path and the path of the approaching vehicle."

"Number 7. The mere fact, if you find it be be a fact, that decedent reached the point where he desired to turn into his drive before the arrival of defendant's truck, at that point, would not give decedent the right to make a left hand turn into the path of defendant's approaching truck."

It seems to us that the criticism made of request No. 4 is not well taken. A request to charge of necessity must be realistic and is given in view of either the disputed or undisputed fact or facts tending to prove a certain condition. The undisputed facts in this case disclose that immediately before the accident, according to plaintiff's own testimony, the truck was not over fifty feet away from decedent's automobile, and according to defendant's testimony, not over twenty-five feet away when decedent undertook or attempted to make a turn into his drive.

We believe this request reveals that the law in respect to the facts in the case, was appropriately stated and that it is made clear that it had to do with the situation at hand.

Request No. 5 comes in for several criticisms, the most important and interesting being that the same has no application to this case for the reason that the accident did not occur at the intersection of two highways. In other words, appellant makes the contention that §§6310-28 and 6310-28a, GC are limited in their operation to the intersection of streets and highways. We deem it necessary to herein quote the sections of the General Code dealing with this particular situation:

"Sec. 6310-28 and §6310-28a GC are cognate sections, pertaining to the right of way at highway intersections, and should be together construed, one section requires the operator of a vehicle to yield the right of way at highway intersections to a vehicle approaching from the right, and the other defines 'right of way' as the right 'to proceed uninterruptedly in a lawful manner in the direction in which it is moving,' in preference to another vehicle approaching into its path from a different di-

rection. Construed together these sections confer an absolute right of way upon the vehicle approaching from the right, qualified only by the requirement that, in proceeding uninterruptedly it must proceed in a lawful manner".

The two sections involved herein are as follows:

"Sec. 6310-28. 'Right of way' means the right of a vehicle to proceed uninterruptedly in a lawful manner in the direction in which it is moving in preference to another vehicle approaching from a different direction into its path."

"Sec. 6310-28a. Excepting where otherwise hereinafter provided, the operator of a vehicle shall yield the right of way at the intersection of its path and the path of another vehicle to the vehicle approaching from the right."

That §6310-28 and §6310-28a pertain to the right of way at the intersection of highways and roads is unquestionably true for the simple reason that the path of one vehicle "and the path of another vehicle" may intersect when two highways join or cross each other; but these two sections in no uncertain terms make it equally clear that they are not limited to situations arising at streets and highways that intersect. Indeed it is a matter of significance and simple observation that in neither of these sections are the words "roads, highways or streets" even mentioned. If the legislature had intended to limit the application of these two sections to intersecting roads or highways it could, and it is to be presumed would have done so.

In order to grant the contention of the appellant, the Court would have to reconstruct the two sections just quoted. In the instant case we have: "The truck is proceeding in a lawful manner in the direction in which it is moving. Decedent's automobile is "approaching from a different direction into its path." It is further required that "the operator of a vehicle shall yield the right of way at the intersection of its path and the path of another vehicle to the vehicle approaching from the right." In making his turn decedent placed his car in such position that defendant's truck was definitely to the right of decedent's automobile, and unless one or the other yielded the right of way a collision was inevitable at the intersection of the paths of the two vehicles. The authorities are unanimous in holding that a vehicle making or undertaking to make a left turn in front of a vehicle coming from the opposite direction comes within the purview of the right of way regulations, for the simple reason that when a person makes a left turn under such circumstances, the oncoming vehicle is approaching from the right.

In the case of Mapp v Holland, 37 A. L. R., Page 478, which holds in construing the Virginia right of way statute that,

"A statute is to be construed so as to embrace all the situations in which the mischief sought to be remedied is found to exist."

Certainly it requires no stretch of the imagination to conclude that one meeting an automobile approaching from an opposite direction and turning his automobile to the left in front of the approaching automobile is interfering with "the right of a vehicle to proceed uninterruptedly in a lawful manner in the direction in which it is moving in preference to another vehicle approaching from a different direction into its path."

Respecting the further criticism of Request Number 5, we refer to the case of Morris v Bloomgren, where it will be observed that Request Number 5 is copied bodily from Request Number 4 therein contained; concerning which the Supreme Court said, "Special Charge Number 4 should have been given by the trial court. It is a substantial repetition of the traffic sec-

tions of the Ohio law, and embodies all the elements necessary to confer the 'right of way' privilege to the vehicle approaching from the right."

Respecting Special Charge Number 7, we have to say that in one form or another it has been given and approved many times. Such criticism is not well taken.

The fifth specification of error has to do with the Court's charge on preponderance of the evidence. We feel that no discussion is needed of this phase of the Court's charge, for the reason that it is the customary charge given, followed and accepted for a number of years.

So that we find from an examination of the whole of the record in this case that substantial justice has been done and that no error prejudicial to the rights of appellant has intervened.

It, therefore, follows that the judgment of the Common Pleas Court will be affirmed and exceptions may be noted.

SHERICK, PJ. & MONTGOMERY, J., concur.